## Maloney v. Cleveland, Cincinnati, Chicago & St. Louis Railway Company.

(Decided February 10, 1925.)

### Appeal from Jefferson Circuit Court (Common Pleas, Second Division).

1. Carriers—Railroads Not Insurers Against Delay, but Must Exercise Reasonable Diligence.—Railroad companies are not insurers against delay in shipment of freight, but are required to exercise reasonable diligence to forward same with dispatch.

2. Carriers—Company's Schedule Not Conclusive as to Reasonableness of Time of Delivery.—Company's schedule is not conclusive as to whether delivery was made within reasonable time.

3. Carriers—Reasonableness of Time Goods Were in Transat Question for Jury.—In action against carrier to recover for loss through fall of market of carload of eggs delivered sixth day after ship-

ment due to holiday congestion at terminal, when schedule called for delivery on fourth day, held, question for jury presented on issue as to reasonableness of time of transportation and delivery.

THOMAS C. MAPOTHER for appellant.

HUMPHREY, CRAWFORD & MIDDLETON and LOUIS SEELBACH, JR., for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

Appellant, a commission merchant in the city of Louisville, sued the C. C. C. & St. L. Ry. Co. to recover damages for loss in value of a carload of eggs, occasioned by delay in transit between Louisville and New York city. From a judgment for defendant, plaintiff appeals.

It appears that appellee specializes in rapid transit service, giving to "manifest perishable freight transportation a precedence, the route being over its lines to Cleveland, thence over the Lake Shore to Buffalo, and from there over the New York Central to New York city.

The shipment in question left Louisville at 8:10 p. m. on Wednesday evening, February 9th, and arrived at the 72nd street station in New York on Sunday, the 13th, at 9:45 p. m., and remained at that place until 1:45 a. m. Tuesday, at which time it was transferred to the St. John's station, and there received by the consignee at 10:35 Tuesday and sold on Tuesday and Wednesday, the market on those days being six cents per dozen lower than that on Monday.

Several witnesses testify as to traveling with similar shipments and state that the usual and customary time in making the trip on this line is about 60 hours; that trains leaving Louisville in the evening and traveling in the usual and customary manner ordinarily arrive in New York city on the morning of the third day after their departure, and that there is no difference in the actual running time between summer and winter shipments; that deliveries are ordinarily made within an hour or two after the arrival of the shipment in New York city. There is also testimony to the effect that the 72nd street station is a delivery point for cars loaded with produce and has ample track facilities for unloading same; that it is more convenient for commission merchants engaged in the produce business to receive freight at that station than it is for them to receive it at the St. John's yard;

this car was not consigned to any particular station and it is argued that it should have been unloaded at the 72nd street station and that the delay of 27 hours in transferring it to St. John's yard was inexcusable; that if the defendant and its connecting lines had exercised proper diligence this shipment would have been delivered to the consignee on Saturday morning in ample time for him to have unloaded it and placed the eggs on Monday's market; that even after it arrived Sunday evening, if delivery had been made at the 72nd street station on Monday, it could have been received by the consignee in time for a sale on that day's market.

On the other hand, it is claimed by appellee that its schedule for this class of freight from Louisville to New York is about 60 hours in the summer and about 83 hours in the winter, the difference being caused by climatic conditions; that in the winter, shipments leaving Louisville not later than 9 p. m. are received in New York city on the morning of the fourth day thereafter; that not only is this in accordance with the schedule, but it is also usual and customary, and that it is a fair and reasonable time within which to make such deliveries.

Ordinarily the shipment would have been received on Sunday morning, but freight cannot be received by the consignee on that day, and in approaching terminals on Sunday, carriers do not hasten to deliver; that St. John's station is the point of delivery for freight of this character; that Saturday, the 12th of February, was a public holiday and no goods received by consignees on that day; that this caused a congestion in the yards at the St. John's station, and that this car had to take its turn, and was delayed for that reason.

Appellant counters this with the argument that if the delivery had been made on Sunday morning in the customary manner his car would have been at the head instead of at the foot of the list, and thereby received earlier by the consignee.

Railroad companies are not insurers against delay in shipment of freight, but are required to exercise reasonable diligence to forward same with dispatch. Adams Express Co. v. Burr Oak Jersey Farm, 182 Ky. 116; Louisville & Cin. Packet Co. v. Bottorff, 25 Rep. 1324; 10 C. J., pages 283-5.

Naturally the kind and character of freight is a factor to be considered in determining diligence, as a de-

lay that would destroy perishable articles might not affect other commodities.   10 C. J. 286-7; nor are the companies' schedules controlling in this matter.   Such a schedule is competent in evidence but is not conclusive on the issue, which is whether or not the transportation and delivery were made within a reasonable time.   St. L. & S. F. Ry. Co. v. Perry, 138 Pac. 1027; Same v. Shephard, 139 Pac. 833; Dickinson v. Seay, 175 Pac. 216; M. K. & T. Ry. Co. v. Dunn, 157 S. W. 434.

That issue was submitted to the jury under proper instructions, but it is argued that the plaintiff was entitled to a peremptory instruction, or, if not, that the verdict is flagrantly against the evidence.

In this appellant overlooks the fact that the witness for appellee not only testifies as to the schedule time of the train, but also states that the reasonable, usual and customary time of shipment during the winter, between the points mentioned, is for it to arrive in New York city on the fourth day after it leaves Louisville.   The testimony also is that no delay is occasioned by failing to hurry a shipment on Sunday when it is approaching a terminal on that day.   This would raise a question for the jury to determine as to whether or not the time the shipment was in transit was reasonable.   It must also be borne in mind that the appellee's testimony is that the St. John's station was congested with two days' deliveries and that this station is the one to which all through freight is consigned.

True, appellant argues that but for this delay on Sunday his car might have been at the head of the list instead of toward the foot.   It is not shown in this respect just how many cars were received at the station during Saturday, so that the court may not determine as a matter of law that this car could have reached that station on Monday in time to have been unloaded, even if it had reached New York earlier Sunday morning. Hence, it was a proper matter for the jury to consider and determine, nor can we say that the verdict is so palpably against the weight of the evidence as to authorize the court to set aside the verdict of the jury.

It does not appear that the instructions are subject to any serious criticism.

Wherefore, perceiving no error, the judgment is affirmed.